United States District Court
Southern District of Texas
**ENTERED**
November 16, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARION EKTEFAEI, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00409 |
| | § | |
| ANDREW SAUL, COMMISSIONER | § | |
| OF SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Marion Ektefaei ("Ektefaei") seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). Before me, with the consent of the parties, are competing motions for summary judgment filed by Ektefaei and Defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 13, 14.

## BACKGROUND

In July 2016, Ektefaei filed an application for disability insurance benefits under Title II of the Act, alleging disability as of June 17, 2016. Ektefaei's application was initially denied and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Ektefaei was not disabled. Ektefaei filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (internal quotation marks and citations omitted). The result is a judicial review limited to the reasons relied on as stated in the ALJ's decision where *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

2

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the Commissioner considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at step one that Ektefaei had not engaged in substantial gainful activity since June 17, 2016.

The ALJ found at step two that Ektefaei had the following severe impairments: diabetes mellitus, obesity, and hypertension.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Ektefaei's RFC, as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), she can occasionally lift and carry 10 pounds and frequently 5 pounds. She can stand and walk two of 8 hours each and sit six of 8 hours for a full 8 hour day. She has unlimited push/pull and gross/fine dexterity except for occasional push and pull with the lower extremities, bilaterally and frequent hand use, bilaterally. She can occasionally climb stairs, but no ladders, ropes, scaffolds or run. She can occasionally bend, stoop, crouch, crawl, bend and twist, but no squatting, exposure to heights, dangerous machinery or uneven surfaces. She has no mental impairment.

3

Dkt. 6-3 at 21.

Also prior to step four, the ALJ considered several strokes Ektefaei suffered and the alleged residual impairments from those strokes. The ALJ found that Ektefaei's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Dkt. 6-3 at 22. Specifically, the ALJ considered Ektefaei's 2012 stroke and found it both "remote" and "likely a mild occurrence, as she was discharged after 2 days and she did not require rehabilitation." *Id.* The ALJ also consulted medical records entered during a physical examination Ektefaei underwent on February 23, 2016. *See id.* He found that the medical records did "not support the alleged loss of functioning" or otherwise "support [claimant's contention] of residual impairments." *Id.* at 23. Discussing Ektefaei's history of strokes, the ALJ found that Ektefaei underwent no post-stroke physical therapy, "only had a 30 percent heart stenosis and *no* stent or surgical heart procedure," and "[h]er ejection fraction was a robust 55-60% as late as June 21, 2018." *Id.* Finally, the ALJ found that Ektefaei led a relatively active lifestyle that included trips to visit family in New York and crocheting hats for the homeless. *See id.*

At step four, the ALJ found Ektefaei capable of performing past relevant work as an intake worker and as a case manager, explaining that "[t]his work does not require the performance of work-related activities precluded by [Ektefaei's] residual functional capacity." *Id.* at 24. The ALJ concluded that Ektefaei was not disabled and that she is able to perform the work "as actually performed by [her] and as generally performed in the national

economy." *Id.* at 25.  Specifically, the ALJ accepted the vocational expert's testimony that Ektefaei could still perform her past relevant work as it is most like the DOT job of "case manager under DOT Code 169.262-010." *Id.* at 24.  Accordingly, the ALJ determined that Ektefaei was not disabled and thus not entitled to benefits.

## DISCUSSION

In this appeal of the ALJ's decision, Ektefaei asks me to determine (1) whether the ALJ applied the correct legal standard at step two; (2) if the ALJ did apply the incorrect legal standard at step two, whether application of the improper legal standard prejudiced Ektefaei; and (3) whether the ALJ failed to fulfill his duty to fully and fairly develop the administrative record by ruling on Ektefaei's eligibility without ordering a consultative evaluation of Ektefaei's neurological limitations.  I address each issue in turn.

## A.      STEP TWO LEGAL STANDARD AND HARMLESS ERROR

Ektefaei first contends that the ALJ applied the wrong legal standard at step two.  She argues that this misapplication prejudiced her because it excluded consideration of her stroke history and residual symptoms from her RFC.  The Commissioner responds that any error caused by the ALJ's misapplication of the appropriate legal standard is harmless error such that remand is unwarranted.

At step two, the ALJ must determine whether the claimant's impairments are severe. *See* 20 C.F.R. § 1520(a)(4)(ii).  In *Stone v. Heckler*, the Fifth Circuit held that an impairment qualifies as severe unless "it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d 1099, 1101 (5th Cir. 1985)

(cleaned up).  Put another way, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond*, 892 F.3d at 817 (quoting *Stone*, 752 F.2d at 1101).  The ALJ and Appeals Council are presumed to have applied the incorrect standard for determining whether an impairment is severe "unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect."  *Stone*, 752 F.2d at 1106.

In this case, the ALJ failed to reference the *Stone* standard or another Fifth Circuit case to that effect.  Instead, in the "Applicable Law" section of the ALJ's decision, the ALJ stated that "[a]n impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." Dkt. 6-3 at 18.  The ALJ further observed that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."  *Id.*  These statements do not properly set forth the applicable severity standard.  "[U]nlike the ALJ's articulation of the severity standard, *Stone* provides no allowance for a *minimal*, and much less a *significant*, interference with a claimant's ability to work."  *Murphy v. Berryhill*, No. 3:17-CV-01260-M-BH, 2018 WL 4568808, at *14 (N.D. Tex. Sept. 24, 2018) (analyzing the identical language at issue in this case and concluding that the ALJ failed to lay out the proper legal standard).  *See also Arteaga v. Berryhill*, No. 4:18-cv-3475, 2020 WL 1154570, at *3 (S.D. Tex. Mar. 10, 2020) ("*Stone* requires a non-severe impairment to have *no* effect on an individual's ability to work, not *minimal limitation*."); *Norsworthy v. Berryhill*, No. 18-CV-00507, 2019 WL 2931393, at *4

6

(S.D. Tex. June 13, 2019) ("*Stone* precludes even minimal interference with an individual's ability to work."). The ALJ thus erred at step two by applying the incorrect legal standard.

Having concluded that the ALJ erred at step two by applying the incorrect legal standard, I must now determine whether that error was harmless. *See Murphy*, 2018 WL 4568808, at *14 (A "*Stone* error does not mandate automatic reversal and remand . . . ; application of harmless error analysis is appropriate in cases where the ALJ proceeds past step two in the sequential evaluation process."). "A step two error is harmless if the ALJ proceeds beyond step two and gives proper consideration to both the severe and non-severe impairments in the remaining steps." *Ardoin v. Saul*, No. 4:19-CV-02022, 2020 WL 2934814, at *3 (S.D. Tex. June 3, 2020). *See also Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

Although the ALJ committed a *Stone* error at step two, his analysis proceeded past step two. In assessing Ektefaei's RFC, the ALJ extensively discussed her history of strokes, noting the complete lack of evidence supporting the existence of any ongoing stroke-related limitations. In other words, the ALJ considered Ektefaei's medical record, but found that it did not support any conclusion that Ektefaei suffered "residual impairments." Dkt. 6-3 at 23 ("Although [Ektefaei] endorses residual effect from the [stroke], the record simply does not support residual impairments."). Importantly, Ektefaei's motion does not direct me to any medical records demonstrating the existence of any ongoing limitations, and my own review of the medical records did not uncover any evidence showing Ektefaei suffers residual symptoms from her strokes. Thus, Ektefaei has failed to carry her "burden of proving the

7

[ALJ's *Stone*] error was not harmless by showing [she] was prejudiced by it." *Ardoin*, 2020 WL 2934814, at *3.

**B.      DUTY TO FULLY AND FAIRLY DEVELOP THE RECORD**

Ektefaei next argues that the ALJ failed to fulfill his duty to fully and fairly develop the record because he did not order a consultative evaluation.  When a claimant contends that an ALJ failed to fully and fairly develop the administrative record, the court must consider "whether the record contained sufficient evidence for him to make an informed decision." *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008).  Where the record contains adequate evidence, "the ALJ need not have supplemented the record with additional evidence." *Id.*  ALJs have discretionary authority to "order a consultative examination to develop a full and fair record."  *Wittneben v. Berryhill*, 3:18-CV-00174, 2019 WL 1130112, at *5 (S.D. Tex. Mar. 12, 2019).  Given that discretion, a consultative evaluation becomes mandatory "when such an evaluation is necessary to enable the ALJ to make the determination."  *Id.* (internal quotation marks and citation omitted).  The mandate to order a consultative evaluation is triggered when the claimant provides "evidence sufficient to raise a suspicion concerning a non-exertional impairment."  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).   Non-exertional impairments are those impairments that "affect only [an applicant's] ability to meet the demands of jobs other than the strength demands."  20 C.F.R. § 416.969a(c)(1).  Because the medical record contains no evidence of a non-exertional impairment, the decision to order a consultative evaluation lies with the ALJ.

Ektefaei cites *Wittneben* in support of her position.  But *Wittneben* involved a claimant with dementia and Alzheimer's disease.  These impairments are non-exertional impairments

that affect a claimant's ability to mentally function in a work environment.  I see nothing in the record or in the briefing showing that Ektefaei's history of strokes resulted in mental impairments that render her incapable of engaging in substantial gainful activity.  Although a mental and physical examination might help the ALJ make his decision, the decision to order a consultative evaluation is left to his sound discretion.  The ALJ did not err.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Dkt. 14) is **GRANTED** and Plaintiff's Motion for Summary Judgment (Dkt. 13) is **DENIED**.  The decision of the ALJ is **AFFIRMED**.

SIGNED this _____ day of November 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE